The Clerk will call the next case. Before we begin, I just want to advise both of you that Justice Holdridge is not well, so he is not with us today. He's under the weather and he is going to participate in the case, both with having read and prepared with the briefs and he will listen to the tapes. And he'll participate in the disposition. So, Ms. Mertes. Before I start, can I reserve five minutes for my rebuttal? Yes, you will. You'll be given five minutes. May it please the Court. My name is Megan Mertes and I have the pleasure of representing Shirley Pearson, the appellant in this matter. At the time of the divorce, Shirley and Bruce had been married 20 years. Bruce had worked for the railroad for approximately 18 years at the time of the divorce. Ms. Pearson was unrepresented in the divorce proceedings. She signed an appearance and consent and she signed the property settlement agreement. Several days following the signing of the property settlement agreement, Mr. Franks and his attorney went into court and did an uncontested divorce, proving up and entering a judgment which incorporated the property settlement agreement. The property settlement agreement is the only document that bears Shirley's signature. The property settlement agreement is clear and unambiguous. It provides that Shirley is awarded $621 per month upon Bruce's retirement. Does it say from whom, who's going to pay it? It does not reference any, it doesn't say railroad retirement. It just states that she'll receive $621 per month upon Bruce's retirement. It says a qualified domestic relations order will enter awarding her the $621 per month. The issue in this case is the judgment, which was entered in ex parte when she was not present, incorporates language in paragraph E of the judgment, which Mr. Franks will characterize as clarification but actually modifies the terms of the property settlement agreement. The judgment incorporated language that states that there will be a separate payment of $621 per month, but that now it's not necessary for a qualified domestic relations order to enter. It also states that instead of receiving the $621 per month upon Bruce's retirement, it will be upon her reaching the eligibility age. It is our position that even if you take into consideration the judgment and the property settlement agreement together, they're unambiguous in their award of $621 to Ms. Pearson. When Mr. Osborne presents his case, I anticipate he'll discuss tier 1 benefits, tier 2 benefits, divorce, spousal, annuity benefits. Those terms simply do not appear anywhere in the property settlement agreement, and they don't appear in the judgment, which has this so-called clarifying language. It is clear that Ms. Pearson was awarded $621 per month. Even if the trial court finds that there is some ambiguity, the parole evidence would support our position. At the hearing in this case, Shirley testified that it was very important that she was going to receive $621 per month. She didn't have any retirement. She states she never saw any correspondence from the railroad retirement. Mr. Franks testified that he never discussed the varying tiers of his retirement with her. The ambiguities, if any, exist should be construed against the drafter, that is Mr. Franks. The property settlement agreement, the only document which bears Ms. Pearson's signature, is clear in its award. Taken together, the property settlement agreement and the judgment, still clear. She's awarded $621. There is no language concerning the tier 1 benefits, the tier 2 benefits, and the divorce, spousal, annuity. Do we know whether or not she received a copy of the judgment when it was entered from her husband's attorney from the office at all after the entry of this judgment? The only testimony concerning the judgment from Shirley states that she never had seen it. At the trial that was at the trial court, her testimony was that she had never seen the judgment. And the marital settlement agreement, when it was signed, it was her understanding that would be incorporated, that would become the judgment. And that is why she didn't appear or didn't go to court. That's correct. She signed an appearance and consent, and she signed the property settlement agreement, and then she did not appear in the court. And if your honors don't have any more questions, I think it's a straightforward case. The only document that Ms. Pearson signed is clear in its award. The language concerning the qualified domestic relations order, it's clear that an order has to enter to provide her with this award. That's what we're asking in our petition to enforce, that a partition order enter, ordering, providing her with the $621 per month. The counsel had argued at the trial court that the partition order is actually adding all this additional language, because it's going to provide her with his non-tier one benefits. However, a qualified domestic relations order typically have lots of additional language that's not part of the property settlement agreement. The partition order is very similar to a qualified domestic relations order, in that it's going to be forwarded to the administrator of the pension, and it's going to then provide for the payment to the non-participant in the pension plan, which would have been Ms. Pearson. We believe that the trial court should be reversed, and that the petition to enforce should be granted. Normally, I mean, quadro orders don't say you're going to get X dollars a month. Usually they tell the pension administrator, okay, take X percent of what's there, segregate it, and then pay it when it's paid. In other words, some portion of one of the party's pension funds is deemed marital property, they're getting divorced, this percentage of that is marital property, segregated, and then it comes time to pay it as it's payable. I believe your honor is referring to a lot of times we incorporate sort of the hunt formula into 50% of the marital portion, but I mean, there are times when you have a specific dollar amount like you have in the property settlement agreement that then is reduced into the qualified domestic relations order or the order participating the pension. Yes, you've got a defined benefit plan. I'm trying to figure out how this pension fund is out there to be obligated to pay $621 a month for some undefined period. It doesn't say for how long. You know what I mean? It's kind of vague. I understand your honor. I don't believe that the property settlement agreement is vague and that it's going to award her $621 a month upon his retirement. For how long? Until she passes. Well, what if there's not enough money in the pension, in this guy's portion of the pension, paying to pay that? Your honor, typically I believe that would be sort of a different issue if the plan couldn't administrate the qualified domestic relations order, then there may be some issue that would have to be addressed by the trial court of the parties, but that's not the case here. The case is she was awarded $621 a month and we're asking that the order enter for the plan to administer. So what do you say the judgment is? The one she signed or the one the court entered? Which one are you trying to enforce? I believe that the property settlement agreement is the only document that bears her signature. Well, but that's not a judgment. It was changed. I agree, but that change is the modification of the property settlement agreement. She didn't have notice. It was entered without her knowledge that the agreement she had entered in was modified in that way. Okay, well then it seems to me that you're posturing this in the form of trying to enforce a judgment, when in fact it strikes me as what you're seeking is relief from a judgment. And saying that judgment's no good for the reasons you just stated. This is wrong and I need relief from that judgment and you need to enter a judgment that conforms with what the agreement was. And those are procedurally two different things. Your Honor, the Hall case kind of dealt with this type of situation and the Hall case is a little different than our pleading stance. The Hall case they had actually called their petition to modify the judgment and the trial court actually heard it upon the 214-01 standard. And actually when it got to the appellate court, the appellate court said no, the substance is a petition to enforce. And so we're going to disregard that your pleading is actually called a petition to modify, it's a petition to enforce. In the Hall case there was four retirement plans and the property settlement agreement only referenced two specific retirement plans. And there was some general language that all plans were going to be divided 50%. In the Hall case the husband said no, we specifically left out these two plans. We only wanted to address the two that are specifically in the property settlement agreement. We left out my two pensions. And when the Hall case got up to the appellate court, we looked at the substance of your petition. We're not asking to modify, we're asking to enforce the property settlement agreement. $621 a month, which is then also in this so-called clarifying language in the judgment, reiterated. A $621 separate payment to the wife. There's no discussion that this is the divorce spousal annuity that would have its own terms considering when it's going to be paid. There's no reference in the judgment or the property settlement agreement on Tier 1 or Tier 2 benefits. Well doesn't the reference to a quadro kind of imply all? I mean, a quadro is, I mean, that's kind of a term of art, isn't it? Yeah, a quadro would refer to an ERISA type of retirement that requires that you have the specific Qualified Domestic Relations order, which contains some language concerning what the rights are for the plan. It is a term of art, but what we're asking for is a petition order, which is the equivalent, I guess, to a Qualified Domestic Relations order at the railroad retirement. Well, I'm just saying, the reference to quadro indicates that the $621 is not to be paid by anybody but by the retirement plan, right? Yes. And the railroad says, well, under federal law, we don't pay $621 a month. And by the way, how can a circuit judge in Illinois order the railroad retirement board to pay something if they say we don't have to pay under federal law? I don't believe that there's anything in the record saying that the railroad retirement would reject a partition order for the $621 a month. There's nothing in the record that indicates that the railroad retirement order wouldn't accept a partition order awarding a $621 a month. And earlier, you had said that in the event, which is not atypical, that a quadro is submitted to the judge, signed, sent on to the pension administrators, that it's not atypical, they can be rejected. They don't have the right information, they don't have the right dollar amount, they don't have the right formula, incomplete. And then that comes back and then that is a supplemental proceeding at the circuit court level. In the event that that happens, that that doesn't negate the agreement, but then you have to go back and at that point say, well, the railroad says they don't get $621 or they can only get it this way or whatever, and then that's a different proceeding. I've had a lot of qualified director's relations orders come back after they've been submitted for various reasons. They don't always end up in a supplementary proceeding. Sometimes it's just ministerial, we've got to change some wording, and it's approved. What I believe Mr. Osborne has presented is that this is some separate divorce spousal annuity, doesn't require any orders, because she just automatically qualifies for it once she reaches eligibility age and is not married. That kind of language doesn't appear anywhere in the property settlement agreement. I don't know what the railroad retirement, if they get the partition order, I'm assuming they will enter it, because there is a benefit there that Mr. Franks is receiving. If it was rejected, then yes, we would have to probably have another proceeding to discuss that issue, but it wouldn't be procedurally where we're at right now. Right now we have a property settlement agreement award Ms. Pearson $621 per month. Even if you read it with the judgment, the judgment again reiterates the $621 a month. It doesn't indicate that this is some separate payment. It doesn't have the language concerning Tier 1 benefits, Tier 2 benefits. And it's our position that the petition to enforce should be entered and that the order that we're requesting would then award her the $621 a month that she contracted for in the property settlement agreement. I get that, but the problem is the railroad wasn't party to the agreement. And so my understanding is in the briefs is that the railroad said, well, you don't get the $621 a month because you remarried. That's correct. And your position is nothing about getting remarried in this contract, right? Correct. And their position is made plain is that, well, under federal law there is a provision, and that's the way we pay it. And they're saying, by the way, we didn't sign that settlement document. And like I said, in a normal ERISA type of thing, you're talking about property that has been segregated that belongs to one of the parties that's in the possession of a plan administrator. These are vested retirement funds that are basically being held by some plan administrator. And the court says, hey, that's so-and-so's property, but I've determined so much of it belongs to such-and-such. Segregate that out. Where in the railroad case, they're saying this is the federal government's money, and this is what we'll pay under these circumstances. And they're saying by contract between two people, you can't change that. And so I don't know how you're going to get over that. I believe this case is very similar and very standard to a lot of property settlement agreements. Pension plans are not typically brought into, nor do they approve, property settlement agreements, which award parties a certain percentage or a dollar amount of the opposing side's retirement plan. Then the Qualified Domestic Relations Order entered, which in this case is the partition order, is requesting then, the railroad says, well, we need an order from the trial court in our certain forms, which is very similar to sort of how a pension plan operates, or your ERISA type of plan. And the railroad's retirement's saying, here's this order, that's what we need entered, and that's where the petition to enforce comes. Their position is you would have to read in all this language that she's not entitled to the 621, because it's clear that it was supposed to be the divorce spouse annuity, and she should have known that when she remarried that she was going to not be eligible for the 621. Simply those terms do not appear in the property settlement agreement, nor do they appear even in the so-called clarifying language of judgment. So in conclusion, it's Ms. Pearson's position that the only document bearing her signature is unambiguous in its award of $621 a month, and respectfully request that you reverse the trial court's decision in this matter and grant the petition to enforce. Let me just ask you one other question, so I'm clear. And you want the court to issue an order directed to the railroad retirement fund, not to the appellee? Correct, the partition order. So you're not arguing that this money's going to come out of the appellee's personal funds, you want an order issued to the railroad retirement? To enforce the judgment, yes. Mr. Osborne? May it please the court, this is Mertis. Good morning. Can we just address the last question? What do you care if the court, or what's your client care if the court enters an order to the railroad retirement board ordering them to do something that my guess is they're not going to do? We absolutely care because the specific order that the appellant requested that the trial court enter is a partition order partitioning that tier of Mr. Frank's pension benefits that will, in fact, diminish his benefits. The railroad retirement system is, in my experience, unique. It consists of two tiers. One tier, tier one, is the equivalent of Social Security. And in a divorce case, a trial court nor can this appellate court dispose of either party's Social Security benefits. And, in fact, that's exactly what the clarification that was provided in the judgment signed by Judge Dunnegan in 98 made to the agreement that the parties had reached. That between the date that they signed their agreement and the date that Mr. Frank and I were in court before Judge Dunnegan, we communicated with the railroad retirement board, which said, sorry, Mr. Osborne, this is not an ERISA pension. You cannot do a QDRO, which is not so much a term of art as it is a term of statute. The federal ERISA statute, which created the ability to fund tax deferred investments, creates an exception to the exclusive right of the employee to his retirement. And that exception is a qualified domestic relations order. The railroad retirement system is not an ERISA qualified plan. So what would happen is one of two things. Either this is the tier one benefit, which under tier one, as is in the record, because Judge Hauptman did identify that there was sufficient ambiguity in the two documents taken together, that because there's that ambiguity, he needs to understand what the facts are. And the facts are that the tier one benefit, which would have been payable to Mrs. Frank as of 1998, was $621, the exact amount that they agreed should be paid to her. And you correctly pointed out in your first inquiry that that payment was not to come from Mr. Frank. It was to be by a QDRO. The plan administrator cannot accept a QDRO on tier one benefits. In fact, she gets her $621 whether or not he agrees to it, whether or not there's any wording in the judgment. She gets $621 per month as long as two things happen. One, she was married to him for 10 years. And two, she turned 65 years of age and is not married at the time she turns. She could still become eligible for her $621 a month. That's what the regular retirement system will pay to her, $621 a month, when she turns age 65, if she is single at that time. What she's asking for, though, is not that $621. She wants a second $621. And where she wants the second $621 is by a partition order that takes it out of his non-tier one benefits, his tier two benefits. And the evidence that Judge Hauptman heard at the trial, after he found an ambiguity, was that as of 1998, his entire tier two benefits, his defined pension, equivalent to any other defined benefit pension, was $428. So it makes no sense for the two of them to have agreed that he would pay her $621 per month out of his defined benefit pension that was 100% of the marital interest was $428. The $621 that they agreed on was her divorce spouse annuity, which is exactly what the judgment says. But the agreement that she signed says that nowhere. And it also says that they both agree by signing it that they know the contents and that they are true in substance and in fact. Correct. So when you say that there was a clarification to that, there's not really a clarification if what she signed says there's going to be a quadro and that she's going to get $621 at the time that the husband retires from that quadro when the fact is there is no quadro. It is not upon his retirement. That is not a clarification. Well, it is a clarification to the extent that a quadro is impossible. The railroad retirement system will not honor a quadro. A judgment incorporating a marital settlement agreement can occur that doesn't just incorporate the marital settlement agreement, but it changes the term to which she has signed the waiver of appearance because the marital settlement agreement is going to become the judgment. Only it doesn't in its entirety. It becomes a part of the judgment. And so now we have, actually we have evidence that was entered. Only it is without notice. And I know that she's not represented, but I don't know how there can be any change. A lot of initials at the end when you're like, hey, this came. But this upset the apple cart in all of it. He retires two years before, my understanding, she would have become eligible. Correct. So now we have another 24 months when you say, you know what, you can't get this until you retire. Well, now we've got that money. Now we have to refigure other terms, perhaps, or maybe I'm going to get another bank account or I'm going to get one of the motorcycles or the cars or something to compensate for that. I don't see anywhere where any of that was explained or understood. We have an acknowledgment of understanding by the wife that that could happen by not coming to court. And the problem with addressing that issue in the manner in which you pose it is exactly what Justice Schmidt raised, which is the procedural context within which we are here today. We are not here today because there was any challenge to the enforcement of the judgment or any challenge to the validity of the judgment. The judgment is valid, and they didn't seek to vacate the judgment. They didn't seek even to modify the judgment. In fact, in the history, as recited in the brief, the procedural history of this case is, before they filed a petition to enforce, they did file a petition to vacate or modify the judgment. A 2-1401 petition filed more than two years after the original judgment. A motion to dismiss was filed, and they withdrew that. They filed a second motion asking for modification. Another motion to dismiss, another withdrawal. It was their third strike was when they filed not a motion to modify or vacate the judgment, but a motion to enforce the judgment. And that's the procedural context where the trial court found itself and where we are today. There is no 2-1401 motion to vacate that judgment. So now where are we? We have to look at the judgment, which is enforceable according to its terms, which is the judgment signed by Judge Dunnegan after a hearing on April 30th of 1998. He heard the evidence. He heard the testimony of Mr. Frank with respect to grounds. He looked at the Merit of Settlement Agreement. He looked at the judgment. He read the judgment, and he signed the judgment. And that judgment stands, and they're not seeking to modify it. They're seeking to enforce it. So what did Judge Hautman, the trial judge, now do is he looked at, what is my job when I'm being asked to enforce these two things, an agreement and a judgment? How am I supposed to proceed? And he recited in his opinion exactly how he's supposed to proceed, which is to look at those two documents as one. The agreement is merged into the judgment. And when he looks at those two, he can't tell what the party's intent was. And that's his job, is to try and glean what the party's intended. So since it was ambiguous, the language of the agreement and the language of the judgment into which it was merged was ambiguous. His job was to listen to some evidence to find out what the party's intended. And when we get to that point, there is no question here. And that takes me to sort of a threshold question, which is, what is the standard of review today? Now, this occurred to me in particular when I looked at the Third District's Specific Administrative Order 48, which says, you're supposed to not only set the standard of review, but you're supposed to set it for every issue. What is the issue today? The only issue that was raised in their motion for reconsideration at the trial level, the only issue that they state in their brief is, were these documents ambiguous? And should we look to plural evidence to reconcile the ambiguity? That's the only issue that they state. And so, in their brief, they point out that the standard of review for determining whether it's ambiguous or not is de novo, which is correct. That is the standard of review. But then, counsel comes up here and we start arguing the facts and the trial court's determination of, you know, is this the Tier 1? Is this the Tier 2? What did they really agree on? What was their intent? That's a completely different standard of review. That's a manifest way of the evidence. And this judge heard these parties' testimony. He considered evidence, including all the printouts from the Railroad Retirement Board that explain the difference between Tier 1 and Tier 2. And you know what the judge wrote in his opinion? He wrote, I find that the testimony of Mrs. Frank is not credible. I don't believe it. When she testified that she didn't get a copy of the judgment, that she didn't understand any of this, he found that not to be credible. And this court has to give deference to Judge Hauptman's ruling with respect to credibility of evidence. And in giving him that deference, then you have to find there's a manifest way issue and he has to have abused his discretion in making his findings that I believe that the parties intended for Mrs. Frank to get her divorced spouse annuity, since that was exactly $621, and that's what she is getting. This judgment allows her to get that. And if no order is entered, no enforcement order is entered, she will still get her divorced spouse annuity of $621, as long as at age 65 she's single. She won't get a separate second $621 from his Tier 2 pension, which will reduce his pension almost in half, because that was not what the parties agreed to. They never agreed that she was going to get two $621 checks, one from her Tier 1, one from her Tier 2. And since the trial court, after hearing the evidence, said, I'm hearing evidence because I find these documents ambiguous, that's what my task is, giving the procedural status of this case. You're asking me to enforce an order and a judgment, which I have to look at together in order to do. Once I hear that evidence, the answer is clear. I don't believe her, and looking at all of the facts and circumstances, I know what they agreed to. They agreed she was going to get $621 from the divorced spouse annuity, and she still will, under the terms of the existing judgment, without any modification, without any enforcement. Any other questions I can address? I do respectfully request that the Court affirm the decision of the Circuit Court of the 14th Judicial Circuit of December 20, 2013. And while I'm on the record and on the tape, I do convey my best wishes to Justice Holdridge for a rapid recovery. Thank you, Your Honor. Ms. Mertes for rebuttal. I, too, looked at the local court rule, seeing the standard of review, and went back and looked closely at my briefs to make sure we had complied with that rule, and we laid out the standard of review, which is de novo. Mr. Osborne had not challenged the standard of review. He didn't separate the standard of review from the issue. Okay. But what do you define, you say de novo. What specifically do you define as the issue? The issue is whether the trial court properly found that an ambiguity existed. Okay. And that's de novo. So then, assuming he found that's your idea, that's all you want us to decide, is whether he properly found an ambiguity? Well, in our briefs we also say, even if you find that an ambiguity that he properly found an ambiguity, we do then go to the next argument, and that the parole evidence was overwhelming in support of Ms. Pearson. And you agree that that's manifestly the evidence? I don't have any authority before me that's different, but Mr. Osborne hadn't indicated there was any issue with the standard of review. I wouldn't kid you, it is. So Mr. Osborne repeatedly said that Ms. Pearson is asking for two separate payments. She's not. She's asking for what was bargained for in the agreement. She's requesting her $621 per month upon his retirement. Since we really are into that second issue, what does $621, that's kind of a funny number to come up with, where did that come from, out of thin air? I don't know. I mean, I know what Mr. Franks testified to and what Mr. Osborne has presented. They said that would be her spousal benefit at the time, and the fact that doesn't that give credence to the way the judge figured out the thing, this is what the Railroad Retirement Board is going to give you upon my retirement, or found out later then, not upon his retirement, but upon her reaching retirement age. I mean, that credence that they expected this to be her spousal benefit under the Railroad Retirement? Then why wasn't that language used? If that was a divorce spousal annuity and she wasn't being awarded any sort of other benefit, that language could have been used. That's what Hall says, that they specifically could have used that language. And that's your argument that there's no ambiguity, but for the sake of argument, if there is an ambiguity, isn't that kind of reasonable for the draw of the thing? Well, that's what they were talking about, because $621 is an odd number. But a lot of negotiations in the 20 years I practiced law in Emerson, I'll give you $543 or $10,963, you know what I'm saying? So the $621, and it seems it couldn't just be coincidence that that was her spousal award under the Railroad Retirement, and that's what they were talking about. I agree with what you're saying, but her testimony is they never had any discussion. She never reviewed any sort of Railroad Retirement benefit statement. There's nothing in the agreement that she signed. Justice O'Brien had said sort of that give and take in the divorce proceedings, where, oh, by the way, you're not going to get this when Mr. Franks retires, you have to wait two years, and you can't remarry. Oh, wait, maybe I should request something else from the mayoral summary. There's nothing giving rise that this was the divorce spousal annuity, and she would lose it. I mean, that information was available to her, right? And, unfortunately, this is one of the dangers that people face when they decide to go pro se and aren't represented. But I would especially argue that what happened in this case, that now you have this judgment that was entered, it should not be something that a pro se litigant should have to risk. Because if so, then why would we ever have agreed property settlement agreements if when they don't appear you can then substantially modify the terms? But you're the one here asking the court to enforce the judgment, not to set it aside, but to enforce it. And as counsel pointed out when I looked at the record, this is not a 214-01. So you're not asking for relief from the judgment to be vacated, you're asking us to enforce it. Well, the judgment is what it is. And if you have, there's a situation which counsel has cited, the case of Newman v. Newman, where there was a discrepancy between the judgment language and then also the property settlement agreement. In Newman, the judgment had said that the husband would insure the wife and kids and the property settlement agreement just said the children. And the court, in trying to resolve that issue, said there was specific language that they used that said it was obvious from the report of the proceedings that the divorce proved that the court did not intend to impose any condition which was at various with the agreement, and assumed that the parties concurred concerning all of its terms. The court had also indicated that it wasn't going to impose an obligation which was not present in the property settlement agreement between the parties. Newman's different in this case, because in that case both parties were represented. This case is different. She didn't appear, and so we're asking, yes, enforce the agreement that is clearly what she agreed to, $621 a month upon retirement. I'll grant you it's troubling to me that this was changed, you know, pro se it was not even present to say, oh, by the way, Judge, there's some changes here, we'll just change this in here, and not say, well, King's X, get the other side in here, and then we'll talk about it. I don't understand why that didn't happen. But that being said, we've got procedures, and one was a 214-01 within two years for release from judgment, saying, hey, I've been bamboozled. Judge, you know, you need to set this aside, and have at it then. Didn't happen, so the court's faced with ambiguity. Here's evidence. This is the way he resolves it, and we've got to determine, gee, is the evidence so contrary that no reasonable person could agree with the way Judge Halpin decided this? Your Honor, I would respectfully suggest that the evidence produced at the trial, that we do meet even that burden, that it's clear that she believed she was receiving $621 a month upon his retirement. It was very important for her when she entered into the property settlement agreement that she had a retirement. She didn't have a retirement. She had this IRA that came from a work comp settlement. If you look, they characterize it as overwhelmingly favorable to Ms. Pearson, and that's simply not the case. It was equal division of marital property, and to say that she's not going to receive what she bargained for in that property settlement agreement, which is clearly what the parties contemplated in 1998, that she was going to receive $621 a month upon his retirement. In conclusion, no. And as you know, horrible things happen to people, and they go out, for example, and get injured and wait one day too late or two days or two years too late to file the suit, and even though they were wrong, they were hurt, they were damaged, they're out in a cold because of legal rules. And I just, how do we, you know, we've got a judgment here, found an ambiguity, there was an evidentiary hearing. The judge said that he didn't believe your client, and what about that was against the, why did he have to believe her? Because of the actual agreement signed by the parties in 1998 in support of her testimony, Your Honor. In conclusion, we respectfully request that this court reverse the trial court's decision and draft a petition to enforce. Thank you, Ms. Murdoch. Thank you, Mr. Osborne. Thank you both for your arguments here today. This matter will be taken under advisement, and you will receive a written decision as soon as possible. And right now we'll take a short recess until 115.